UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>(1) WILL D. ALLEN and )<br>(2) SUSAN C. DAUB, )<br>)<br>Defendants ) <br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 15cr10181<br><br>Violations:<br><br>Conspiracy to Commit Wire Fraud<br>(18 U.S.C. § 1349)<br><br>Wire Fraud<br>(18 U.S.C. § 1343)<br><br>Aggravated Identity Theft<br>(18 U.S.C. § 1028A(a)(1))<br><br>Monetary Transactions in Proceeds of<br>Specified Unlawful Activity<br>(18 U.S.C. § 1957(a))<br><br>Aiding and Abetting<br>(18 U.S.C. § 2)<br><br>Wire Fraud Criminal Forfeiture Allegations<br>(18 U.S.C. § 981(a)(1)(C) & 28 U.S.C.<br>§ 2461(c))<br><br>Monetary Transactions in Proceeds of<br>Specified Unlawful Activity<br>Forfeiture Allegations<br>(18 U.S.C. § 982(a)(1)) |

## INDICTMENT

The Grand Jury charges that:

### General Allegations

At all times relevant to this Indictment:

1.  WILL D. ALLEN and SUSAN C. DAUB were individuals who resided in Florida. ALLEN is a former professional football player who played in the National Football

League from 2001 through approximately 2012. DAUB is a former bank executive with experience in the areas of loans and private lending.

2.   Capital Financial Partners, LLC ("CFP") was a limited liability company registered in Massachusetts. According to its registration documents, CFP's address was 470 Atlantic Ave., 7th Floor, Boston, MA 02210. Its two managers were ALLEN and DAUB. According to its annual reports, the general character of CFP's business was to "engage in investment activities."

3.   As recently as March 2015, CFP's webpage, www.capfinp.com, advertised "private lending to unique individuals" and featured photos of high-end real estate and luxury goods. The webpage indicated that the firm "specializes in issuing short-term loans to professional athletes." The page explained that: "[i]n many cases, athletes' contracts do not allow them to access their guaranteed money during the off season or early in the season when they may need a significant sum to purchase a house or car, pay bills or meet a financial demand. By pooling the resources of a network of investors, CFP gives athletes access to money when they need it while providing investors with solid, short-term returns on investment."

4.   According to the CFP website, CFP's average loan to an athlete was for $600,000 "on a 12 month term at very favorable rates for the industry." The page indicated that CFP's minimum loan was $75,000. There was no stated maximum. The webpage noted that loans "are only limited by there [sic] purpose and your ability to repay."

5.   ALLEN and DAUB are also the registered agents for several CFP-related companies registered in Florida and Massachusetts. Those companies include Capital Financial Partners Enterprises, LLC, Capital Financial Partners Holdings, LLC, and Capital Financial Holdings, LLC.

6. ALLEN and DAUB were both signatories to CFP's bank accounts, including an account at Bank of America ending in 8156 (the "8156 account"). ALLEN and DAUB used the 8156 account to conduct most of CFP's business.

### The Scheme to Defraud

7. From in or around and between June 2012 and March 2015, ALLEN and DAUB raised money from investors by telling them that their money would be loaned to athletes at a high interest rate, in most instances after being pooled with the money of other investors. Although that sometimes occurred, ALLEN and DAUB also used investor money for their personal benefit and to pay other investors, falsely telling the recipients of the funds that the money represented returns on their investments. As part of the scheme, ALLEN and DAUB sometimes oversubscribed loans, falsely telling investors that loans were larger than they actually were and collecting more money from investors than was actually being loaned to athletes. In other instances, ALLEN and DAUB collected money for loans that they never made. In total, ALLEN and DAUB collected from investors millions of dollars more than they loaned to athletes, and then spent much of that money on themselves and other business ventures.

### Manner and Means of the Scheme to Defraud

Fictitious Loans

*Athlete 1*

8. In May 2014, ALLEN and DAUB collected at least $500,000 for a loan that was ostensibly to be issued to Athlete 1, a professional football player. In an e-mail from DAUB to a group of potential investors on or about April 30, 2014, DAUB wrote:

> [Athlete 1] as I am sure you know is the [National Football League ("NFL") Team's] best player after [Quarterback]. He does have a guaranteed contract, just checked with Will. [NFL Team] will pay us directly as always and all the insurances will be taken out. The rate is 12% flat to investor. It is a 8 month loan. Principal and interest will be paid twice a month from Sept 15 to Dec 30. . . .

3

9. DAUB followed the April 30 e-mail with another two sent to prospective investors on or about May 2, 2014, to which she attached Athlete 1's National Football League contracts and a term sheet confirming that the proposed loan was for $500,000. When, on or about May 4, 2014, one investor asked, "The 500K loan again will be paid directly by the [NFL Team] to Capital Partners correct?" DAUB confirmed: "yes we are being paid directly from the [NFL Team]."

10. On or about May 6, 2014, three investors transferred a total of $500,000 to the 8156 account for the purpose of funding the purported loan to Athlete 1. Two of those investors, Investors A and B, were Massachusetts residents. ALLEN and DAUB never funded the loan to Athlete 1, however. Instead, they used the money for other purposes, including to make a transfer of over $400,000 to Encore Capital Properties, LLC, a Florida company that identifies ALLEN, DAUB, and a third individual as managers.

11. As part of their scheme, and to keep the investors in this purported loan from discovering their fraud, ALLEN and DAUB made payments to the investors roughly in accordance with the schedule set forth in the agreements between the investors and CFP, creating the false impression that Athlete 1 was repaying his purported loan on schedule.

*Athlete 2*

12. Two of the fictitious loans were ostensibly issued to Athlete 2, a professional baseball player. The first of these was funded in August 2014 by Investor C, a Massachusetts resident, after DAUB told him that his money would be used to fund a loan to Athlete 2. On or about August 22, 2014, Investor C sent CFP $300,000 in two, equal payments directed to the 8156 account, one payment by wire and the other by electronic transfer.

13. Thereafter, Investor C repeatedly asked DAUB for copies of the loan agreement and other documentation purportedly signed by Athlete 2. On or about October 1, 2014, DAUB sent Investor C an e-mail, to which she attached what she called "the signed note from [Athlete 2]." The attachment contained what appeared to be a loan agreement and promissory note between Athlete 2 and CFP for a $300,000 loan to Athlete 2. Both documents appeared to have been signed by Athlete 2, whose signature was notarized. One of the documents was also signed by DAUB.

14. The signatures of Athlete 2 on the loan agreement and the promissory note were fake; Athlete 2 did not sign them or receive a loan from CFP.

15. Instead of being used to fund a loan to Athlete 2, the money invested by Investor C was used for other purposes, including to make payments to existing investors, to fund a loan to a different professional athlete, to fund related businesses, and to pay ALLEN's personal expenses. To keep Investor C from discovering their fraud, ALLEN and DAUB made payments to him roughly in accordance with the schedule set forth in the agreement between Investor C and CFP, creating the false impression that Athlete 2 was repaying the purported loan on schedule.

16. In November 2014, DAUB solicited $300,000 from Investor D, another Massachusetts resident, for a second purported loan to Athlete 2. On or about November 10, 2014, Investor D wired $300,000 to the 8156 account.

17. ALLEN and DAUB did not make a loan to Athlete 2. Instead, they used Investor D's money for other purposes, including to make a payment to an existing investor, to fund a loan to a different professional athlete, and to fund ALLEN's personal bank account.

*Athlete 3*

18.     In November 2014, ALLEN and DAUB collected money for a $100,000 loan that was ostensibly to be issued to Athlete 3, a professional baseball player. On or about November 14, 2014, Investor A wired $100,000 to the 8156 account to fund the purported loan.

19.     ALLEN and DAUB did not make the loan to Athlete 3. Instead, they used Investor A's money for other purposes, including to make payments to other investors.

20.     As part of their scheme, and to keep Investor A from discovering their fraud, ALLEN and DAUB made payments to him roughly in accordance with the schedule set forth in the agreement between Investor A and CFP, creating the false impression that Athlete 3 was repaying his purported loan on schedule.

*Athlete 4*

21.     Also in November 2014, ALLEN and DAUB collected $350,000 for a $400,000 loan that was ostensibly to be issued to Athlete 4, a professional football player. On or about November 18, 2014, Investor B wired $350,000 to the 8156 account to fund the purported loan.

22.     ALLEN and DAUB did not make a loan to Athlete 4. Instead, they used Investor B's money for other purposes, including to make payments to other investors and to pay ALLEN's personal expenses.

23.     As part of their scheme, and to keep Investor B from discovering their fraud, ALLEN and DAUB repaid his investment roughly in accordance with the schedule set forth in the agreement between Investor B and CFP, creating the false impression that Athlete 4 had repaid his purported loan on schedule.

*Athlete 5*

24. In January 2015, ALLEN and DAUB collected at least $300,000 from several investors, including Investor D, for a loan that was ostensibly to be issued to Athlete 5, a professional football player.

25. ALLEN and DAUB did not make a loan to Athlete 5. Instead, they used the investors' money for other purposes.

Oversubscribed Loans

*Athlete 6*

26. Between April and May of 2014, ALLEN and DAUB collected millions of dollars for an April 2014 loan to a professional hockey player, Athlete 6, to whom CFP had made several loans in the past. ALLEN and DAUB provided at least some of those investors with purported loan agreements between Athlete 6 and Capital Financial Holdings, signed promissory notes, and signed direct deposit agreements, all of which showed a value for the loan of approximately $5.65 million. In fact, the value of the April 2014 loan was only approximately $3.4 million.

27. ALLEN and DAUB did not spend the investors' money in accordance with the distribution schedule they had given to the investors. Instead, they used the money for other purposes, including to make payments to earlier investors; to fund loans to other athletes; and to make transfers for personal use, including to accounts related to their other businesses or investments.

28. Athlete 6 did not make timely repayment of his loan, and he entered bankruptcy in October 2014. ALLEN and DAUB thereafter concealed his nonpayment from investors in the loan, including by making purported loan repayments to those investors using money provided by other investors.

29. ALLEN and DAUB also sought to conceal their fraud by falsely telling investors that Athlete 6 was making payments, and that his loan was performing as expected. On or about November 21, 2014, for example, DAUB sent an e-mail to investors with the subject, "[Athlete 6] loan." The e-mail was signed "Will and Sue." In it, ALLEN and DAUB falsely told investors, "Our loan with [Athlete 6] is performing as expected. All payments have been made in full and on time." In fact, as both ALLEN and DAUB knew, Athlete 6 had declared bankruptcy and had not made all payments on time and in full.

*Athlete 1*

30. In or about March of 2015, DAUB contacted several CFP investors about a purported $2.5 million loan to Athlete 1, the professional football player. The investors gave CFP at least $2 million to fund the purported loan.

31. CFP's actual loan to Athlete 1 was for only $500,000.

32. The excess money raised to fund the supposed $2.5 million loan to Athlete 1 was used primarily for other purposes, including to make payments to investors on existing loans and to make transfers to personal accounts and accounts related to ALLEN and DAUB's other businesses or investments.

**Use of Investor Money for Personal Expenses**

33. As noted, and as part of their scheme, in addition to using new investor money to pay back existing investors, ALLEN and DAUB sometimes used investor money to pay themselves and their personal expenses, and to make transfers to businesses they owned or in which they had an interest.

## COUNT ONE
(Conspiracy to Commit Wire Fraud – 18 U.S.C. §§ 1349)

34. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 33 of this Indictment and further charges that in or about and between June 2012 and March 2015, in the District of Massachusetts and elsewhere, the defendants,

### (1) WILL D. ALLEN and (2) SUSAN C. DAUB,

together with others unknown to the Grand Jury, conspired to commit wire fraud, in violation of 18 U.S.C. § 1343, to wit: having devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing that scheme, namely transfers of money from investors to one or more bank accounts in ALLEN and DAUB's control for loans purportedly issued to professional athletes, which money ALLEN and DAUB instead used for other purposes.

All in violation of 18 U.S.C. § 1349.

## COUNTS TWO THROUGH THIRTEEN
(Wire Fraud – 18 U.S.C. § 1343)

35.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 33 of this Indictment and further charges that, on or about the dates listed below, in the District of Massachusetts and elsewhere, the defendants,

### (1) WILL D. ALLEN and (2) SUSAN C. DAUB,

together with others unknown to the Grand Jury, having devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Date | Wire |
|---|---|---|
| 2 | 4/17/14 | Transfer of $100,000 from an HSBC Bank account in name of Investor C to Bank of America account number xxxx xxxx 8156, together with associated notices, account updates, and acknowledgements |
| 3 | 4/18/14 | Transfer of $100,000 from a Metro Credit Union account in name of Investor A to Bank of America account number xxxx xxxx 8156, together with associated notices, account updates, and acknowledgements |
| 4 | 4/22/14 | Transfer of $150,000 from a Cape Cod 5 account ending in 0039 to Bank of America account number xxxx xxxx 8156, together with associated notices, account updates, and acknowledgements |
| 5 | 5/6/14 | Transfer of $200,000 from a Metro Credit Union account in the name of Investor A to Bank of America account number xxxx xxxx 8156, together with associated notices, account updates, and acknowledgements |
| 6 | 5/6/14 | Transfer of $200,000 from an account in the name of Investor B to Bank of America account number xxxx xxxx 8156, together with associated notices, account updates, and acknowledgements |
| 7 | 8/22/14 | Transfer of $150,000 from an account in the name of Investor C to Bank of America account number xxxx xxxx 8156, together with associated notices, account updates, and acknowledgements |

| | | |
|---|---|---|
| 8 | 8/22/14 | Transfer of $150,000 from an account at JPMorgan Chase Bank in the name of Investor C to Bank of America account number xxxx xxxx 8156, together with associated notices, account updates, and acknowledgements |
| 9 | 11/10/14 | Transfer of $300,000 from an account at the Rockland Trust Company in the name of Investor D to Bank of America account number xxxx xxxx 8156, together with associated notices, account updates, and acknowledgements |
| 10 | 11/14/14 | Transfer of $100,000 from a Metro Credit Union account in the name of Investor A to Bank of America account number xxxx xxxx 8156, together with associated notices, account updates, and acknowledgements |
| 11 | 11/18/14 | Transfer of $350,000 from a Wells Fargo Bank account in the name of Investor B to Bank of America account number xxxx xxxx 8156, together with associated notices, account updates, and acknowledgements |
| 12 | 1/15/15 | Transfer of $200,000 from a Cape Cod 5 account ending in 0039 to Bank of America account number xxxx xxxx 8156, together with associated notices, account updates, and acknowledgements |
| 13 | 3/19/15 | Transfer of $250,000 from a Metro Credit Union account in the name of Investor A to Bank of America account number xxxx xxxx 8156, together with associated notices, account updates, and acknowledgements |

All in violation of 18 U.S.C. §§ 1343 and 2.

## COUNTS FOURTEEN THROUGH NINETEEN
(Aggravated Identity Theft – 18 U.S.C. § 1028A(a)(1))

36. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 33 of this Indictment and further charges that, in the District of Massachusetts and elsewhere, the defendants,

### (1) WILL D. ALLEN and (2) SUSAN C. DAUB,

did knowingly transfer, possess, and use, without lawful authority, means of identification of another person—to wit, the names of the individuals identified below—during and in relation to the commission of wire fraud in violation of 18 U.S.C. § 1343, as charged in the counts referenced below:

| Count | Person | Associated Violation |
|:---:|:---:|:---:|
| 14 | Athlete 1 | Wire Fraud, as charged in Counts 5 and 6 |
| 15 | Athlete 2 | Wire Fraud, as charged in Counts 7 and 8 |
| 16 | Athlete 2 | Wire Fraud, as charged in Count 9 |
| 17 | Athlete 3 | Wire Fraud, as charged in Count 10 |
| 18 | Athlete 4 | Wire Fraud, as charged in Count 11 |
| 19 | Athlete 5 | Wire Fraud, as charged in Count 12 |

All in violation of 18 U.S.C. §§ 1028A(a)(1) and 2.

## COUNTS TWENTY THROUGH TWENTY-TWO
(Monetary Transactions in Proceeds of Specified Unlawful Activity – 18 U.S.C. § 1957(a))

37. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 33 of this Indictment and further charges that, on or about the following dates, in the District of Massachusetts and elsewhere, the defendant,

### (1) WILL D. ALLEN,

did knowingly engage and attempt to engage in monetary transactions by, through, and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, which monetary transactions involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, by causing the transfers set forth below from an account at Bank of America, the assets of which were insured by the Federal Deposit Insurance Corporation:

| Count | Date | Transaction | Amount |
|---|---|---|---|
| 20 | 5/6/14 | Transfer from Bank of America account number xxxx xxxx 8156 to Will Allen account ending in 8798 | $300,000 |
| 21 | 8/25/14 | Transfer from Bank of America account number xxxx xxxx 8156 to Insurance Depot of America (Detail: "Loan for Leads") | $40,000 |
| 22 | 11/21/14 | Transfer from Bank of America account number xxxx xxxx 8156 to Will Allen account ending in 8798 | $15,000 |

All in violation of 18 U.S.C. § 1957.

## COUNT TWENTY-THREE
(Monetary Transactions in Proceeds of Specified Unlawful Activity – 18 U.S.C. § 1957(a))

38.  The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 33 of this Indictment and further charges that, on or about the following dates, in the District of Massachusetts and elsewhere, the defendants,

### (1) WILL D. ALLEN and (2) SUSAN C. DAUB,

did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, which monetary transactions involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, by causing the transfer set forth below from an account at Bank of America, the assets of which were insured by the Federal Deposit Insurance Corporation:

| Count | Date | Transaction | Amount |
|---|---|---|---|
| 23 | 5/9/14 | Transfer from Bank of America account number xxxx xxxx 8156 to Bank of America NA account ending in 1285 (Detail: "Loan to Encore Capital") | $407,358.57 |

All in violation of 18 U.S.C. §§ 1957(a) and 2.

## WIRE FRAUD CRIMINAL FORFEITURE
(18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c))

The Grand Jury further charges that:

39. Upon conviction of one or more of the offenses charged in Counts 1 through 13, the defendants,

### (1) WILL D. ALLEN and (2) SUSAN C. DAUB,

shall forfeit to the United States, jointly and severally, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of such offenses.

40. If any of the property described above, as a result of any act or omission by the defendants

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

it is the intention of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in paragraph 39 above.

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

## MONETARY TRANSACTIONS IN PROCEEDS OF SPECIFIED UNLAWFUL ACTIVITY CRIMINAL FORFEITURE
(18 U.S.C. § 982(a)(1))

The Grand Jury further charges that:

41. Upon conviction of one or more of the offenses charged in Counts 20 through 22, the defendant,

### (1) WILL D. ALLEN,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

42. Upon conviction of the offense charged in Count 23, the defendants,

### (1) WILL D. ALLEN and (2) SUSAN C. DAUB,

shall forfeit to the United States, jointly and severally, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

43. If any of the property described above, as a result of any act or omission by the defendants

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be divided without difficulty,

it is the intention of the United States, pursuant to 28 U.S.C. § 982(b)(1), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in paragraphs 41 and 42 above.

All pursuant to 18 U.S.C. § 982(a)(1).

A TRUE BILL,

_____
FOREPERSON OF THE GRAND JURY

_____
BRIAN PÉREZ-DAPLE
Assistant U.S. Attorney

DISTRICT OF MASSACHUSETTS, July 9, 2015

Returned into the District Court by the Grand Jury Foreperson and filed.

_____
Deputy Clerk   7/9/15 @ 3:30pm